The next matter on our calendar is Carmen Electra and Others v. 59 Murray Enterprises and Others. Thanks. Good morning. Good morning, Your Honor. May it please the Court, John Goloszewski on behalf of the appellants. This case centers around a predatory and exploitative advertising scheme implemented by the defendants in order to sow confusion with the public concerning their product. We are dealing with three Manhattan-based strip clubs here. The product at a strip club is an entertainment experience where women undress and dance for money. In a very real sense, the product is women, and we know from the famous horse opinion and many other opinions from this circuit that confusion as to a plaintiff's product for purposes of trademark law and an alleged infringer's product is actionable under Section 1125a1a. Would you talk about the consents that the women signed when they took these pictures? Absolutely, Your Honor. We believe it was four or five of the plaintiffs. And let's be clear, my clients are professional models. As a matter of course, they enter into releases, hundreds if not thousands of releases. They absolutely enter into releases for the subject images that were then misappropriated. They are professional models. All professional models. They model for these kind of photographs with permission, but there was no permission here. Is that the argument? Well, the inquiry under Section 51 of the New York Civil Rights Act is whether or not, by the terms of the statute, the defendants had written consent. That's the only inquiry. It has been interpreted that way. So even though consent was given at the beginning, at the end did they have written consent is the question for us? I think I disagree with the beginning and the end. They gave consent to a third party with whom they entered into an agreement, and they always did those photographs. Isn't the problem in this case that because you can't make the suits that you would normally make in state court because of the consents that were given, the agreements that were made, you're trying to bring a Lanham Act argument on endorsement. You don't bring a false advertisement claim. You bring an endorsement claim. And an endorsement claim in the Lanham Act has certain particular requirements, and the requirements of that are of confusion. So that what there may be any number of other things which might have been brought but are not before us, the only thing that is before us is have you made out enough for endorsement? And if that's the issue, then the question of confusion, the question of strength of mark and so on is crucial. And the district court found that the only one as to which there was that kind of possible endorsement confusion was one person who didn't show damages. And so there was an injunction. Now, that's what I'd like you to focus on. Thank you, Your Honor. I disagree with the first point is that we don't have a State law claim. Well, maybe you do, but you don't have it here. Well, respectfully, I disagree with that, Your Honor. The question under Section 51 of the Civil Rights Act is whether the defendants had written consent. That is how it has been interpreted for 90 years since Judge Hand issued the Nalin decision in this Court. Well, the question of the general business law is whether there was a general effect as against a specific effect. As to the Section 349 claim, that's something different. But as to Section 51, intellectual property infringers have tried this for decades, have attempted to say that they are third-party beneficiaries of a release with which they had nothing to do. My clients can enter into releases with whomever they like. The operative question under the Court of Appeals of New York in the Stefano case, under the Nalin case, under Judge Rakoff's in the Chamber v. Time Warner case is whether they have consent. And nobody has ever argued that they do. So it doesn't make a difference that there was consent originally in this process? Absolutely not. The question is whether the defendants' ---- Whether the people who used the photos had written consent. This is how ---- I'm sorry. And do they deny that they, do they claim they had it? That has never been, that has never been asserted, that the defendants had written consent. So they admit they, or at least I'll ask counsel, they admit they didn't have written consent. So there's some other basis on which they used these photographs, correct? Well, they had an advertising scene. They wanted to convince the public. Your Honor, they make representations about that they have the most beautiful women in New York or gorgeous strippers, whatever type of girl you're looking for, we got it. They own three strip clubs. They have dozens of strippers who work with them. They misappropriate the images of my clients who are world-class and in some cases world-renowned professional models to back up those representations. Counsel tries to disparage my clients by saying that they are, quote, generic attractive women. But that is not the case at all. These are women who have trademark rights, who have commercialized their image for decades. Every single one of them, Your Honor. Every single one of them? Every single one. And there has never been a standing argument. Is a famous model well-known by their face and form? Absolutely, Your Honor. They have commercialized their image for decades. If I could go back to Your Honor's point, the operative question is not endorsement alone. It is called a false association claim brought under 1125a1a. The district court, going against decades of precedent of this court, which has said, including in the Star Industries case, that confusion under 1125a1a means confusion of any kind, the district court said, no, we're going to get rid of that test. We're going to make a, quote, false endorsement. Let me come back a moment to your State claims. Assuming we say, we decide that there is not a Lanham Act claim, then shouldn't we, under what we usually do, dismiss the State claims without prejudice? You're bringing them in Federal court? Because they're only here because of, as pendant to the Lanham Act. Well, there is diversity of jurisdiction, Your Honor, on all of these claims as well. All of my clients live out of State. That is correct, Your Honor. But if I could go back, the issue that we have is that the district court, the district court said that the product being advertised by the defendants in this case is alcohol. Nothing could be further from the truth. It is a grave and fundamental misunderstanding about what these advertisements are about. These advertisements are trying to get people to come to their strip club. A strip club without nude women is simply a bar. So the district court saying that what they're trying to peddle here is alcohol transformed this into merely a celebrity endorsement case, when it's not. It's not what the statute says. 1125 provides protection for affiliation, connection, association, origin, sponsorship and promotion, all of these things. Star Industries says confusion means confusion of any kind. And the district court ignored all of this. The district court, because it said it's really celebrity endorsement about alcohol, what the district court missed is that they are trying to confuse people about the product. They are trying to tell consumers that if you go to these strip clubs, you're going to see these women dancing there. They say, our gorgeous girls, and they have pictures of my clients next to them. And that is the fundamental problem and why the district court got the entire Your clients identified by name in the pictures? They are not, Your Honor. They are just by their photograph. Right. That's what I thought. I have the exhibits in front of me. Yes. So that they were counting, you're counting, on your clients being recognized, their faces being recognized, their bodies being recognized. How else could they be taking advantage of your clients? They are taking advantage of the goodwill and reputation they have by virtue of being beautiful women. Again, they employ many, many strippers. They used my clients' images because they wanted to convince people that my clients work there, that women who look exactly like my clients work at the club. And if you go and you pay your money to go into the club, these are the women that you're going to see there. It does not hinge on whether or not Carmen Electra is, in fact, going to be there. The question is whether or not these women actually work there or have any affiliation, association, or anything whatsoever to do with these clubs. And everybody agrees that they do not. This is why the district court found, as a matter of law under Rule 56, that these advertisements are, in fact, false. And then, among the other things that the district court did, after finding they're false, it ignored decades of precedent in this court, which says, upon a finding of falsity in a Lanham Act claim, you dispense with the need for extrinsic evidence of confusion. There is a finding of falsity. It is bolstered by staggering confusion rates of upward of 90 percent of respondents who believe that my clients were affiliated with the club, just as they intended, affiliated with the club, agreed to be in the advertisements. Okay. Thank you. That was a few minutes for rebuttal. May it please the Court. I'm Peter Shapiro from the Mississippi Bisgarden-Smith. For the defendant, please. You don't deny you had permission of these women to run their pictures? My clients did not have any consents in their favor to permit use of these photos. So why isn't it a violation of New York State 50 and 51? Well, as to the plaintiffs who signed releases. But you didn't have copies. We did not have copies. The releases didn't go in your favor. They did not, but they're very broad and give the photographer or whoever the holder of the license was the right to use these photographs. You don't claim any direct line of custody from those to you. You just ran these pictures, right? Yes. Where did you get them? My clients relied on a third-party marketing provider who got those images from a — From somewhere. A catalog and other sources that he understood he had the rights to. And it turns out that he did not. But my clients had no knowledge. They relied on that provider to — They knew they didn't have consent from the models, didn't they? They relied on their provider who said, we have all the rights that we need. Unfortunately, it turns out that they did not have — That goes to whether there's malice or things of that sort. Yes. It doesn't go to the underlying question, though. Yes. You have to pay, don't you think, under 50 and 51 damages to these models whose pictures you used? No, I don't believe so. And I think even if you assume that there's a violation under the technical reading of the statute, the fact is plaintiffs here could not establish any damages. As the court found below, the damages expert that they relied on, Mr. Chamberlain, was incompetent, simply made up his numbers in terms of what the plaintiff's damages were, and there was no other evidence in the record of any real damages. They're claiming, you know, the fair market value of their photo shoots was X, whereas for most of them they received only a fraction of X when they were actually modeling. So you admit that you ran these photos without the consent of the models. How do you propose to make them whole? We don't propose to make them whole because it was their obligation in the context of a summary judgment motion to come forward with — lay bare their evidence as to what their damages are. They did that by relying on an expert who was disqualified under Dow-Bear because his methodology was basically nonexistent. And that's why they gave — the district court issued an injunction with respect to one of these whom they thought was sufficiently identifiable but didn't issue — give any damages. Yes. That was under the Lanham Act claim. I don't think injunction is an available remedy under Section 51. I'm more concerned with the 5051 claims. I think that they're more compelling than the Lanham Act claims. Well, you know, even if they're compelling, again, it's plaintiff's obligation to show that they were damaged and they haven't made out that burden. You'd have to reverse the district court and find that Mr. Chamberlain was a qualified expert and that his figures as to damages were appropriately relied upon. And I think if you look at the record, you'll see that there's no basis to do that. He, you know, took models who got $1,000 for a photo shoot and said that the value of a particular image was $25,000, $50,000, $100,000. It's just invented. Can we assume that there are some damages, even though the damages have not been specifically shown because the expert has been excluded at that point? Is it enough to say that where this has happened, some damages are there under 1151 and then proceed to a trial in which they are allowed to try to present other evidence of damages and at that point, whether the evidence is there or not will determine what happens then. But at this stage, do they need more than to show that there is some damage without showing what it is? Well, I don't see any basis to give for the plaintiff's second bite at the apple. Having put all their eggs in the basket of Mr. Chamberlain, saying this is why there are damages, that basket had a big hole in it, why should they be given another opportunity? What is it that is enough to get by, a summary judgment, a preliminary phrase, in a showing of damages? Do you need to, I mean, granted that they put their eggs in that basket and that basket failed, but did they nonetheless have enough there? That's my question. I don't know the answer to it. Well, I think only they could show if they had enough. They tried to show it. The district court correctly ruled that they hadn't shown enough. Under the circumstances, I don't think they'd get another bite at the apple. I think the case is over. I think if I could just turn briefly to the Lanham Act claim, the plaintiffs would like to invent a whole new test. As Judge Calabresi pointed out, they pled a false endorsement claim here. That's what this is about, whether you call it false endorsement or false association. It's requisite that you have a strong mark that's worthy of protection, and that's the test that Starvey-Bacardi, decided by this court, laid out in the first instance. And in order to have a chance of prevailing on a 43A false endorsement claim, you have to show a likelihood of confusion. Here, where there's no strong mark, because nobody knew who these plaintiffs were other than Carmen Electra, there's no possibility of showing a strong mark or a likelihood of confusion. The — again, we get back to a failure of the expert evidence that plaintiffs relied upon. They relied on Mr. — And I do have a question. Do you concede that there is jurisdiction for the State claims, even apart from the Lanham Act, because of diversity? Yes, Your Honor. Okay. So the evidence that they relied upon was of the expert, Mr. Buncher, and he relied on a survey that our expert, Robert Klein, showed was fatally flawed in a myriad of ways. Most importantly, none of the plaintiffs could show that anybody knew who they were. One out of the many respondents identified Carmen Electra. That same person identified a different model as a model who's not even a plaintiff in this case. So there's no basis to show that there's a strong mark here worthy of protection. Plaintiff argues that all you need to show is that the plaintiff's intended to commercialize their images. But there's just nothing in the case law that suggests that unless you've established something akin to secondary meaning that your mark is worthy of protection, for an unregistered mark, you're not going to have any protection. The critical test of confusion here is whether anybody associated these anonymous models with any trademark. Nobody did because nobody knew who they were. As Judge Buchwald found below, the logical assumption anybody would have in looking at these advertisements is that these were models who were paid to lend their image to an advertisement, as is done all the time for peanut butter and every other kind of product. This was not a case where somebody said, oh, because this woman is appearing at this club, I believe that she's endorsing this club's products. False endorsement is what this case is about, and these plaintiffs, other than Carmen Electra, were not sufficiently well-known under any possible standard, whether it's celebrity or just being well-known, to satisfy any test to show the mark. Yes, Carmen Electra was quite well-known, and we do not appeal from the ruling that she's entitled to an injunction in her favor. Again, the judge below probably did not award her damages because the damages expert was incompetent and there was no confident evidence of damages. What are we to make for the 1151 claim from the fact that the court specifically in the Lanham Act case where he did rule in favor of, found no damages. So there she was quite specific that the damages shown were not enough. Correct. And I think that carries over to any of the claims, obviously specifically the Section 51 claim. My time is almost up. Unless there's any further questions, I'll yield the floor. Thank you, counsel. Mr. Golosiewski, what if we agreed with you that 50 and 51 are compelling claims? How could you prove damages when your expert has already been thrown out of this case? Two points. One, Judge Buchwald kicked Mr. Chamberlain because her Honor found that fair market value is not the proper measure of damages in a right-of-publicity case. It is absolutely incorrect. Very importantly, the district court didn't tell us what would be the proper measure of damages. Fair market value for decades has been found to be the proper measure of damages in a right-of-publicity case. Now, people can debate how one gets the fair market value, but to say that fair market value is not the measure of damages is absolutely incorrect, even if Mr. Chamberlain was not scientifically supportable. Absolutely not. And it's part of the record. Their expert, the former president of Ford Models, looked at his methodology and said, these are exactly the steps that you take. The court looked at the fair market value and said, we're not giving fair market value, even if this court was to agree that Mr. Chamberlain is gone. That does not mean that my clients do not get to bring their earnings before a jury. That is, they didn't even move for summary judgment on the issue. But you can get damages even without an expert. Absolutely. There's nothing that's said. And you would do it based on the earnings of these women? Based on decades of earning information, absolutely. That could be presented to a jury, and a jury could say, well, they were entitled to this. They were entitled to this amount, of course. There is no issue from our perspective with that. A lot of talk has been about strength of mark here. And I'd like to point out the fact that strength of mark is but one of seven Polaroid factors, three of which the district court found favored us, including the two most important, similarity of the marks and proximity of the products. And had the court appreciated that the product that was being sold here was not alcohol, but was an entertainment experience with nude women, the quality of the products would have favored us, too. That means four of the seven Polaroid factors favor us. And actual confusion and bad faith are not necessary. That means four of the five Polaroid factors that are necessary favored the plaintiffs. And we are denied the opportunity to bring this court, to bring this case to a jury, because the court says there is no question for Rule 56 purposes that the advertisements are false and misleading. There's no question. But there's also no question that these false and misleading advertisements could under no circumstances cause confusion. They're definitely misleading, but they could definitely not cause confusion. We believe there is a real contradiction in that holding and has been proved to be wrong. Nearly identical claims have gone to juries in the Southern and Middle District of Florida, and they have found — I'm sorry, in the Southern District of Florida — summary judgment has been granted for some of these people on Lanham Act claims. The notion that we cannot go to a jury so the jury can determine strength of mark, which is a factual question, strength of mark, and all of these other issues on the totality of circumstances for likelihood of confusion, there is nothing to support that. There is nothing to support four of seven Polaroid factors favoring a plaintiff, and they are denied the opportunity to go to a jury. Sotomayor, the other cases that you cite are cases in which there were clear false advertising claims as against false endorsement claims. Well, there's one in Connecticut, the Bolin opinion, that I've looked at, and it's really quite a different set of arguments that were made. I'm sorry, Your Honor. If I may, the jury found in the Middle District of Florida both false association under 1125a1a and false advertising under 1125a1b. That is what the jury came down with. The holding of the district court is that no reasonable jury could find likelihood of confusion. And we go down to the Middle District of Florida, and a reasonable jury comes back and says, of course there is a violation, because you look at the totality of circumstances. The Polaroid factors are almost very similar to that applied in the Eleventh Circuit. So I believe my time is up, unless there are any more questions. Thank you. Thank you both. We're reserved to sit.